UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 16bk05364 |
| | ) | (Jointly Administered) |
| Bluberi Gaming Technologies, Inc.*, | ) | Chapter 15 |
| | ) | |
| Debtor(s). | ) | Judge Timothy A. Barnes |

## PROVISIONAL ORDER UNDER CHAPTER 15

———

*The Debtors in this chapter 15 proceeding and the last four digits of each Debtor's United States tax identification number are as follows: Bluberi Gaming Technologies Inc. (9150), Bluberi Group Inc. (5089) and Bluberi USA, Inc. (7934). The Debtors' headquarters are located at 310-2120 Rue Letendre, Drummondville, Québec J2C 7E9 Canada. Bluberi USA, Inc. maintains a post office box located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

———

Upon the Verified Petitions for Recognition of Canadian Proceeding Under Chapter 15 and Motion for Order Granting Related Relief (collectively, the "Verified Petition and Motion") filed by the Petitioner, the duly authorized foreign representative for Bluberi Gaming Technologies Inc. ("Bluberi Gaming"), Bluberi Group Inc. ("Bluberi Group"), and Bluberi USA, Inc. ("Bluberi USA" collectively with Bluberi Gaming and Bluberi Group, "Bluberi" or the "Debtors") for entry of (a) a provisional order (this "Order"): (i) recognizing and enforcing in the United States, on an interim basis, the consolidated initial order (the "Consolidated Initial Order") and the Order Approving A Sale Solicitation Process ("Sale Order") issued on January 28, 2016, by the Canadian Court (attached hereto, respectively as Exhibits A and B), including the sale procedures provisions contained therein, (ii) granting an interim stay of execution against the Debtors' assets and applying sections 362 and 365(e) of the Bankruptcy Code in these chapter 15 cases on an interim basis pursuant to sections 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code, and (iii) granting such other and further relief as this Court deems just and proper; and (b) a final order after notice and a hearing (the "Final Order") (i) granting the petitions in these cases and recognizing the Canadian Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code, or, in the alternative, a "foreign non-main proceeding" under sections 1502(4), 1502(5), 1515, and 1517 of the Bankruptcy Code, (ii) giving full force and effect in the United States to the Consolidated Initial Order and the Sale Order, including any and all extensions, amendments and/or supplements thereto authorized by the Canadian Court and extending the protections of the Provisional Order to Bluberi on a final basis, (iii) applying section 365 of the Bankruptcy Code in these chapter 15 cases on a final basis pursuant to section 1521 of the Bankruptcy Code, and (iv) granting such other and further relief as this Court deems just and proper, all as more fully described in the Verified Petition and Motion; and the Court having jurisdiction to consider the Verified Petition and Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 109 and 1501; and consideration of the Verified Petition and Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and Bluberi having consented to the Court's authority to enter a final order consistent with Article III of the United States Constitution; and venue appearing proper before this Court pursuant to 28 U.S.C. § 1410; and due and proper notice of the provisional relief sought in the Verified Petition and Motion having been provided; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Verified Petition and Motion (the "Hearing"); and the appearances attending and participating parties having been noted in the record of the Hearing; and upon the Pernica

Declaration, the Duhamel Declaration and the Sorensen Declaration filed contemporaneously with the
Verified Petition and Motion, the record of the Hearing and all of the proceedings had before the Court;
and the Court having found and determined that the provisional relief sought in the Verified Petition and
Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that
the legal and factual bases set forth in the Verified Petition and Motion establish just cause for the relief
granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:

A. The findings and conclusions in this Order constitute the Court's findings of fact and conclusions of
law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made
applicable to these proceedings pursuant to Bankruptcy Rule 9014. To the extent any of the following
findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the
following conclusions of law constitute findings of fact, they are adopted as such.

B. All finds and conclusions in this Order are provisional in nature and apply solely to with respect to
the relief granted herein. No finding or conclusion made in this Order is or shall be binding on any
party seeking to challenge such finding or conclusion in the context of approval of the Final Order.

C. This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. These are
core proceedings pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28
U.S.C. § 1410.

D. The Foreign Representative has demonstrated a substantial likelihood of success on the merits that
(a) the Canadian Proceeding is a "foreign main proceeding" as that term is defined in section 1502(4) of the
Bankruptcy Code, or, in the alternative, a "foreign non-main proceeding" under sections 1502(4), 1502(5),
1515, and 1517 of the Bankruptcy Code (b) the Foreign Representative is a "foreign representative" as that
term is defined in section 101(24) of the Bankruptcy Code, (c) all statutory elements for recognition of the
Canadian Proceeding, including the sale procedures provisions contained therein, are satisfied in accordance
with section 1517 of the Bankruptcy Code, (d) upon recognition of the Canadian Proceeding as a foreign
main proceeding, section 362 and section 363 of the Bankruptcy Code will automatically apply in these
chapter 15 cases pursuant to section 1520(a)(1) of the Bankruptcy Code, and (e) that application of section
365(e) on an interim basis to prevent contract counterparties from terminating their prepetition contracts
with Bluberi is entirely consistent with the injunctive relief afforded by the automatic stay under section
362.

E. The Foreign Representative has demonstrated that (a) the commencement of any proceeding or
action in the United States against Bluberi and its business and all of its assets should be stayed pursuant
to sections 1519, 1521, and 105(a) of the Bankruptcy Code, which protections, in each case, shall be
coextensive with the provisions of section 362 of the Bankruptcy Code but subject to the limitations set
forth in section 1519(f) of the Bankruptcy Code, to permit the fair and efficient administration of the
Canadian Proceeding, including an orderly marketing and sale process for all or substantially all of the
assets and property (or an investment in the business) of the Debtors and/or a reorganization pursuant to
a plan of compromise or arrangement, pursuant to the Sale Order and any other applicable orders of the
Canadian Court, for the benefit of all stakeholders, and (b) the relief requested will neither cause an
undue hardship nor create any hardship to parties in interest that is not outweighed by the benefits of the
relief granted herein.

F. The Foreign Representative has demonstrated that Bluberi has assets in the United States, including
bank accounts and valuable licenses and service contracts governed by United States law.

G. The Foreign Representative has demonstrated that without the protection of sections 362 and 365(e) of the Bankruptcy Code, there is a material risk that counterparties to certain of Bluberi's contracts and creditors under Bluberi's prepetition debt instruments may take the position that the commencement of the Canadian Proceeding or these chapter 15 cases authorizes them to terminate such contracts or accelerate obligations or exercise remedies thereunder. Such termination or acceleration may severely impair Bluberi's restructuring efforts and result in irreparable damage to Bluberi's business and the value of Bluberi's assets, and substantial harm to Bluberi's creditors and other parties in interest.

H. The Foreign Representative has demonstrated that absent the relief granted herein, there is a material risk that one or more parties in interest will take action against Bluberi or its assets. As a result, Bluberi may suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law and therefore it is necessary that this Court grant the relief requested in the Verified Petition and Motion without prior notice to parties in interest or their counsel. Further, unless this Order is entered, Bluberi's assets could be subject to efforts by creditors to control, possess, or execute upon such assets and such efforts could result in Bluberi suffering immediate and irreparable injury, loss or damage by, among other things, creditors (a) interfering with the jurisdictional mandate of this Court under chapter 15 of the Bankruptcy Code, and (b) interfering with or undermining the success of the Canadian Proceeding. The Foreign Representative has demonstrated that without provisional approval of the Consolidated Initial Order and the Sale Order, the proposed sale of Bluberi's assets to a purchaser may be impaired to the detriment of its creditors.

I. The Foreign Representative has demonstrated that no other remedy at law is adequate.

J. The Foreign Representative has demonstrated that no injury will result to any party that is greater than the harm to Bluberi's business, assets, and property in the absence of the relief requested in the Verified Petition and Motion.

K. The interests of the public and public policy of the United States will be served by entry of this Order.

L. The Foreign Representative and Bluberi are entitled to the full protections and rights available pursuant to section 1519(a)(1)-(3) of the Bankruptcy Code.

Now, therefore, it is hereby ORDERED, ADJUDGED AND DECREED THAT:

1. The Verified Petition and Motion is GRANTED on an interim basis as set forth herein.

2. The Consolidated Initial Order and the Sale Order are hereby given full force and effect on an interim basis, including, without limitation, the sale procedures provisions contained therein, and the stay of any commencement or continuation of any actions against Bluberi or its assets (except as otherwise expressly provided herein), and shall be given full force and effect in the United States until otherwise ordered by this Court.

3. While this Order is in effect, the Foreign Representative and Bluberi are entitled to the full protections and rights pursuant to section 1519(a)(1), which protections shall be coextensive with the provisions of section 362 of the Bankruptcy Code but subject to the limitations set forth in section 1519(f) of the Bankruptcy Code, and this Order shall operate as a stay of any execution against Bluberi's assets within the territorial jurisdiction of the United States (except as otherwise expressly provided herein).

4. While this Order is in effect, pursuant to sections 1519(a)(3) and 1521(a)(7) of the Bankruptcy

Code, sections 362 and 365(e) of the Bankruptcy Code are hereby made applicable in these cases to Bluberi and the property of Bluberi within the territorial jurisdiction of the United States, other than those provisions of section 362 made expressly inapplicable by section 1519(f) of the Bankruptcy Code

5. Notwithstanding anything to the contrary contained herein, this Order shall not be construed as (a) enjoining the police or regulatory act of a governmental unit, including a criminal action or proceeding, to the extent not stayed pursuant to section 362 of the Bankruptcy Code or (b) staying the exercise of any rights that section 362(o) of the Bankruptcy Code does not allow to be stayed.

6. Any creditor that believes it has been harmed by the provisional relief may file a motion seeking relief from, or modification of, this Order with the Court on not less than seven (7) business days' written notice to Dentons US LLP, 233 South Wacker Drive, Suite 5900, Chicago, Illinois 60606, Attn: Patrick C. Maxcy and Geoffrey M. Miller, and this Court will hear such motion on a date to be scheduled by this Court.

7. To the extent applicable, Rule 65 of the Federal Rules of Civil Procedure has been satisfied in that notice to any person that is required prior to entry and issuance of this Order has been provided. Pursuant to Bankruptcy Rule 7065, the provisions of Federal Rule of Civil Procedure 65(c) are hereby waived, to the extent applicable. To the extent applicable, the provisions of Bankruptcy Rule 7001 are waived with respect to this Order.

8. The Foreign Representative, Bluberi, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

9. Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10. The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Verified Petition and Motion.

11. This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

12. This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

Enter:

FEB 2 2 2016

United States Bankruptcy Judge

EXHIBIT A

(Consolidated Initial Order)

# SUPERIOR COURT
*(Commercial Division)*

C A N A D A
PROVINCE OF QUEBEC
DISTRICT OF MONTRÉAL

Nº:   500-11-049737-154

DATE: January 28, 2016

---

**PRESIDING: THE HONOURABLE JEAN-FRANÇOIS MICHAUD, J.S.C.**

---

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED OF:**

**BLUBERI GAMING TECHNOLOGIES INC. /**
**BLUBERI JEUX ET TECHNOLOGIES INC.**
-and-
**BLUBERI GROUP INC.**
-and-
**BLUBERI USA, INC.**
    Petitioners

and

**ERNST & YOUNG INC.**
    Monitor

---

## SECOND AMENDED AND RESTATED INITIAL ORDER

---

[1]   **ON READING** Bluberi Gaming Technologies Inc., Bluberi Group Inc. and Bluberi USA, Inc.'s *Petition for the Issuance of an Initial Order* and their *Application for Approval of a Sale Solicitation Process, for Extension of the Stay Period and for the Issuance of a Second Amended and Restated Initial Order*, the whole pursuant to the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended, the "**CCAA**") and the exhibits, the affidavits of Mr. Gérald Duhamel and of Mr. Joe Pernica filed in support thereof (the "**Petition**"), the consent of Ernst & Young Inc. (represented by Mr. Martin Rosenthal, CPA, CA, CIRP) to act as Monitor (the "Monitor"), relying upon the submissions of counsel of the parties and being advised that the interested parties, including secured creditors who are likely to be affected by the charge created herein were given prior notice of the presentation of the Petition;

[2]   **SEEING** the Initial Order issued by this Court on November 12, 2015 and the Amended and Restated Initial Order issued on November 18, 2015;

[3]     **SEEING** the Order for the Appointment of a Chief Restructuring Officer issued on December 15, 2015;

[4]     **SEEING** the Order for Extension of the Stay Period and for Authorizing the Payment of Certain Pre-Filing Obligations issued on December 15, 2015;

[5]     **SEEING** the provisions of the CCAA;

**WHEREFORE, THE COURT**

[6]     **ISSUES** this amended  and restated initial order pursuant to the CCAA together with the order issued on November 12, 2015 and the order issued November 18, 2015 ("**Order**"), divided under the following headings:

- Service
- Application of the CCAA
- Effective Time
- Plan of Arrangement
- Stay of Proceedings against the Petitioners and the Property
- Stay of Proceedings against the Directors and Officers
- Possession of Property and Operations
- No Exercise of Rights or Remedies;
- No Interference with Rights
- Continuation of Services
- Non-Derogation of Rights
- Restructuring
- Powers of the Monitor
- Appointment of a Chief Restructuring Officer
- Priorities and General Provisions Relating to CCAA Charges
- Confidentiality
- General

**Service**

[7]     **DECLARES** that sufficient prior notice of the presentation of the Petition has been given by the Petitioners to interested parties, including the secured creditors who are likely to be affected by the charge created herein;

**Application of the CCAA**

[8]     **DECLARES** that the Petitioners are debtor companies to which the CCAA applies;

### Effective time

[9]     **DECLARES** that this Order and all of its provisions are effective as of 12:01 a.m. Montreal time, province of Quebec, on November 18, 2015 ("**Effective Time**");

### Plan of Arrangement

[10]    **DECLARES** that the Petitioners shall have the authority to file with this Court and to submit to their creditors one or more plans of compromise or arrangement (collectively, the "**Plan**") in accordance with the CCAA;

### Stay of Proceedings against the Petitioners and the Property

[11]    **ORDERS** that, until and including March 31, 2016, or such later date as the Court may order ("**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of any of the Petitioners, or affecting the Petitioners' business operations and activities ("**Business**") or the Property (as defined hereinbelow), including as provided in paragraph [15] hereinbelow, except with leave of this Court. Any and all Proceedings currently under way against or in respect of the Petitioners or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court, the whole subject to subsection 11.1 of the CCAA;

[12]    The rights of Her Majesty in right of Canada and Her Majesty in right of a Province are suspended in accordance with the terms and conditions of Subsection 11.09 of the CCAA;

### Stay of Proceedings against the Directors and Officers

[13]    **ORDERS** that during the Stay Period and except as permitted under subsection 11.03(2) of the CCAA, no Proceeding may be commenced, or continued against any former, present or future director or officer of the Petitioners nor against any person deemed to be a director or an officer of the Petitioners under subsection 11.03(3) of the CCAA (each, a "**Director**", and collectively the "**Directors**") in respect of any claim against such Director which arose prior to the Effective Time and which relates to any obligation of the Petitioners where it is alleged that any of the Directors is under any law liable in such capacity for the payment of such obligation;

### Possession of Property and Operations

[14]    **ORDERS** that the Petitioners shall remain in possession and control of its present and future assets, rights, undertakings and properties of every nature and kind whatsoever, and wherever situated, including all proceeds thereof (collectively the "**Property**"), the whole in accordance with the terms and conditions of this order including, but not limited, to paragraph [22] of this Order;

## No Exercise of Rights or Remedies

[15]     **ORDERS** that during the Stay Period, and subject to, inter alia, subsection 11.1 of
the CCAA, all rights and remedies of any individual, natural person, firm, corporation,
partnership, limited liability company, trust, joint venture, association, organization,
governmental body or agency, or any other entity (all of the foregoing, collectively being
"**Persons**" and each being a "**Person**") against or in respect of any of the Petitioners, or
affecting the Business, the Property or any part thereof, are hereby stayed and suspended
except with leave of this Court;

[16]     **DECLARES** that, to the extent any rights, obligations, or prescription, time or
limitation periods, including, without limitation, to file grievances, relating to the Petitioners or
any of the Property or the Business may expire (other than pursuant to the terms of any
contracts, agreements or arrangements of any nature whatsoever), the term of such rights,
obligations, or prescription, time or limitation periods shall hereby be deemed to be extended
by a period equal to the Stay Period. Without limitation to the foregoing, in the event that the
Petitioners become bankrupt or a receiver as defined in subsection 243(2) of the *Bankruptcy
and Insolvency Act* (Canada) ("**BIA**") is appointed in respect of the Petitioners, the period
between the date of the Order and the day on which the Stay Period ends shall not be
calculated in respect of the Petitioners in determining the 30 day periods referred to in
sections 81.1 and 81.2 of the BIA;

## No Interference with Rights

[17]     **ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour,
alter, interfere with, repudiate, resiliate, terminate or cease to perform any right, renewal
right, contract, agreement, licence or permit in favour of or held by the Petitioners, except
with the written consent of the Petitioners and the Monitor, or with leave of this Court;

## Continuation of Services

[18]     **ORDERS** that during the Stay Period and subject to paragraph [20] of this Order and
subsection 11.01 of the CCAA, all Persons having verbal or written agreements with the
Petitioners or statutory or regulatory mandates for the supply of goods or services, including
without limitation all computer software, communication and other data services, centralized
banking services, payroll services, insurance, transportation, utility or other goods or
services made available to the Petitioners, are hereby restrained until further order of this
Court from discontinuing, altering, interfering with or terminating the supply of such goods or
services as may be required by the Petitioners, and that the Petitioners shall be entitled to
the continued use of its current premises, telephone numbers, facsimile numbers, internet
addresses, domain names or other services, provided in each case that the normal prices or
charges for all such goods or services received after the date of the Order are paid by the
Petitioners, without having to provide any security deposit or any other security, in
accordance with normal payment practices of the Petitioners or such other practices as may
be agreed upon by the supplier or service provider and the Petitioners, with the consent of
the Monitor, or as may be ordered by this Court;

[19]     **ORDERS** that, notwithstanding anything else contained herein and subject to
subsection 11.01 of the CCAA, no Person shall be prohibited from requiring immediate
payment for goods, services, use of leased or licensed property or other valuable

consideration provided to the Petitioners on or after the date of this Order, nor shall any Person be under any obligation on or after the date of the Order to make further advance of money or otherwise extend any credit to the Petitioners;

[20]    **ORDERS** that, without limiting the generality of the foregoing and subject to Section 21 of the CCAA, if applicable, cash or cash equivalents placed on deposit by the Petitioners with any Person during the Stay Period, whether in an operating account or otherwise for itself or for another entity, shall not be applied by such Person in reduction or repayment of amounts owing to such Person as of the Effective Time of the Order or due on or before the expiry of the Stay Period or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any financial institution from: (i) reimbursing itself for the amount of any cheques drawn by Petitioners and properly honoured by such institution, or (ii) holding the amount of any cheques or other instruments deposited into the Petitioners' account until those cheques or other instruments have been honoured by the financial institution on which they have been drawn;

### Non-Derogation of Rights

[21]    **ORDERS** that, notwithstanding the foregoing, any Person who provided any kind of letter of credit, guarantee or bond (**"Issuing Party"**) at the request of the Petitioners shall be required to continue honouring any and all such letters, guarantees and bonds, issued on or before the date of the Order, provided that all conditions under such letters, guarantees and bonds are met save and except for defaults resulting from this Order; however, the Issuing Party shall be entitled, where applicable, to retain the bills of lading or shipping or other documents relating thereto until paid;

### Restructuring

[22]    **DECLARES** that, to facilitate the orderly restructuring of its business and financial affairs (**"Restructuring"**) but subject to such requirements as are imposed by the CCAA, the Petitioners shall have the right, subject to approval of the Monitor or further order of the Court, to:

(a)     permanently or temporarily cease, downsize or shut down any of its operations or locations as it deems appropriate and make provision for the consequences thereof in the Plan;

(b)     pursue all avenues to finance or refinance, market, convey, transfer, assign or in any other manner dispose of the Business or Property, in whole or part, subject to further order of the Court and sections 11.3 and 36 of the CCAA, and under reserve of subparagraph (d);

(c)     convey, transfer, assign, lease, or in any other manner dispose of the Property, outside of the ordinary course of business, in whole or in part, provided that the price in each case does not exceed $100,000 the aggregate;

(d)     terminate the employment of such of its employees or temporarily or permanently lay off such of its employees as it deems appropriate and, to the extent any amounts in lieu of notice, termination or severance pay or other

amounts in respect thereof are not paid in the ordinary course, make provision, on such terms as may be agreed upon between the Petitioners and such employee, or failing such agreement, make provision to deal with, any consequences thereof in the Plan, as the Petitioners may determine;

(e)     subject to the provisions of section 32 of the CCAA, disclaim or resiliate, any of its agreements, contracts or arrangements of any nature whatsoever, with such disclaimers or resiliation to be on such terms as may be agreed between the Petitioners and the relevant party, or failing such agreement, to make provision for the consequences thereof in the Plan; and

(f)     subject to section 11.3 of the CCAA, assign any rights and obligations of Petitioners.

[23]    **ORDERS** that, until further order of this Court, notwithstanding the terms and conditions of any agreements currently in place, any receipts of the Petitioners, including any receipts deposited or transferred into any Blocked Account, as defined in Exhibit P-8A, be transferred and remitted to and held in, and any disbursements on account of the Petitioners be made from, the following bank accounts, the whole, under the supervision of the Monitor:

(a)     accounts no. XXXX-110 (CND) and no. XXXX-357 (USD) maintained by Bluberi Gaming Technologies Inc. with Bank of Montreal;

(b)     accounts no. XXXX-102 (CND) and no. XXXX-330 (USD) maintained by Bluberi Group Inc. with Bank of Montreal;

(c)     account no. XXX-838-4 maintained by Bluberi USA, Inc. with BMO Harris Bank.

[24]    **DECLARES** that, if a notice of disclaimer or resiliation is given to a landlord of the Petitioners pursuant to section 32 of the CCAA, then (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours by giving the Petitioners and the Monitor 24 hours prior written notice and (b) at the effective time of the disclaimer or resiliation, the landlord shall be entitled to take possession of any such leased premises and re-lease any such leased premises to third parties on such terms as any such landlord may determine without waiver of, or prejudice to, any claims or rights of the landlord against the Petitioners, provided nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith;

[25]    **ORDERS** that the Petitioners shall provide to any relevant landlord notice of the Petitioners' intention to remove any fittings, fixtures, installations or leasehold improvements at least seven (7) days in advance. If the Petitioners have already vacated the leased premises, it shall not be considered to be in occupation of such location pending the resolution of any dispute between the Petitioners and the landlord;

[26]    **DECLARES** that, in order to facilitate the Restructuring, the Petitioners may, subject to the approval of the Monitor, or further order of the Court, settle claims of customers and suppliers that are in dispute;

[27]    **DECLARES** that, pursuant to sub-paragraph 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c.5, the Petitioners are permitted, in the course of these proceedings, to disclose personal information of identifiable individuals in its possession or control to stakeholders or prospective investors, financiers, buyers or strategic partners and to its advisers (individually, a "**Third Party**"), but only to the extent desirable or required to negotiate and complete the Restructuring or the preparation and implementation of the Plan or a transaction for that purpose, provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements with the Petitioners binding them to maintain and protect the privacy of such information and to limit the use of such information to the extent necessary to complete the transaction or Restructuring then under negotiation. Upon the completion of the use of personal information for the limited purpose set out herein, the personal information shall be returned to the Petitioners or destroyed. In the event that a Third Party acquires personal information as part of the Restructuring or the preparation or implementation of the Plan or a transaction in furtherance thereof, such Third Party may continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Petitioners;

**Powers of the Monitor**

[28]    **ORDERS** that Ernst & Young Inc. (represented by Mr. Martin Rosenthal, CPA, CA, CIRP) is hereby appointed to monitor the business and financial affairs of the Petitioners as an officer of this Court ("**Monitor**") and that the Monitor, in addition to the prescribed powers and obligations, referred to in Section 23 of the CCAA:

(a)     shall, without delay, (i) publish in Le Devoir and (ii) within five (5) business days after the date of this Order (A) post on the Monitor's website (the "**Website**") a notice containing the information prescribed under the CCAA, (B) make this Order publicly available in the manner prescribed under the CCAA, (C) send, in the prescribed manner, a notice to all known creditors having a claim against the Petitioners of more than $1,000, advising them that the Order is publicly available, and (D) prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder;

(b)     shall monitor the Petitioners' receipts and disbursements;

(c)     shall assist the Petitioners, to the extent required by the Petitioners, in dealing with their creditors and other interested Persons during the Stay Period;

(d)     shall assist the Petitioners, to the extent required by the Petitioners, with the preparation of their cash flow projections and any other projections or reports and the development, negotiation and implementation of the Plan;

(e)     shall advise and assist the Petitioners, to the extent required by the Petitioners, to review the Petitioners' business and assess opportunities for cost reduction, revenue enhancement and operating efficiencies;

(f)     shall assist the Petitioners, to the extent required by the Petitioners, with the Restructuring and in their negotiations with their creditors and other interested Persons and with the holding and administering of any meetings held to consider the Plan;

(g)     shall report to the Court on the state of the business and financial affairs of the Petitioners or developments in these proceedings or any related proceedings within the time limits set forth in the CCAA and at such time as considered appropriate by the Monitor or as the Court may order;

(h)     shall report to this Court and interested parties, including but not limited to creditors affected by the Plan, with respect to the Monitor's assessment of, and recommendations with respect to, the Plan;

(i)     may retain and employ such agents, advisers and other assistants as are reasonably necessary for the purpose of carrying out the terms of the Order, including, without limitation, one or more entities related to or affiliated with the Monitor;

(j)     may engage legal counsel to the extent the Monitor considers necessary in connection with the exercise of its powers or the discharge of its obligations in these proceedings and any related proceeding, under the Order or under the CCAA;

(k)     may act as a "foreign representative" of the Petitioners or in any other similar capacity in any insolvency, bankruptcy or reorganisation proceedings outside of Canada;

(l)     may give any consent or approval as may be contemplated by the Order or the CCAA; and

(m)    may perform such other duties as are required by the Order or the CCAA or by this Court from time to time.

Unless expressly authorized to do so by this Court, the Monitor shall not otherwise interfere with the business and financial affairs carried on by the Petitioners, and the Monitor is not empowered to take possession of the Property nor to manage any of the business and financial affairs of the Petitioners;

[29]    **ORDERS** that the Petitioners and its Directors, officers, employees and agents, accountants, auditors and all other Persons having notice of the Order shall forthwith provide the Monitor with unrestricted access to all of the Business and Property, including, without limitation, the premises, books, records, data, including data in electronic form, and all other documents of the Petitioners in connection with the Monitor's duties and responsibilities hereunder;

[30]    **DECLARES** that the Monitor may provide creditors and other relevant stakeholders of the Petitioners with information in response to requests made by them in writing addressed to the Monitor and copied to the Petitioners' counsel. In the case of information that the Monitor has been advised by the Petitioners is confidential, proprietary or

competitive, the Monitor shall not provide such information to any Person without the consent of the Petitioners unless otherwise directed by this Court;

[31]    **DECLARES** that if the Monitor, in its capacity as Monitor, carries on the business of the Petitioners or continues the employment of the Petitioners' employees, the Monitor shall benefit from the provisions of section 11.8 of the CCAA;

[32]    **DECLARES** that no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor or the carrying out the provisions of any order of this Court, except with prior leave of this Court, on at least seven days' notice to the Monitor and its counsel. The entities related to or affiliated with the Monitor shall also be entitled to the protection, benefits and privileges afforded to the Monitor pursuant to this paragraph;

[33]    **ORDERS** that Petitioners shall pay the reasonable fees and disbursements of the Monitor, the Monitor's legal counsel, the Petitioners' legal counsel and other advisers, directly related to these proceedings, the Plan and the Restructuring, whether incurred before or after the Order, and shall provide each with a reasonable retainer in advance on account of such fees and disbursements, if so requested;

[34]    **DECLARES** that the Monitor, the Monitor's legal counsel, if any, the Petitioners' legal counsel and the Monitor and the Petitioners' respective advisers, as security for the professional fees and disbursements incurred both before and after the making of the Order and directly related to these proceedings, the Plan and the Restructuring, be entitled to the benefit of and are hereby granted a charge and security in the Property to the extent of the aggregate amount of \$250,000 ("**Administration Charge**"), having the priority established by paragraphs [51] and [52] hereof;

### Appointment of a Chief Restructuring Officer

[35]    **ORDERS** that the engagement letter dated December 14, 2015 and filed in support of the *Motion for the Appointment of a Chief Restructuring Officer*, dated December 11, 2015, as Exhibit R-2 (the "**CRO Engagement Letter**") whereby the Petitioners have engaged Pernica Advisory Services Inc. ("**PAS**") to provide the services of Joseph Pernica to act as Chief Restructuring Officer of the Petitioners ("**CRO**" and together with PAS, the "**CRO Group**") and the appointment of the CRO pursuant to the terms and conditions set forth in the CRO Engagement Letter is hereby approved, including, without limitation, the payment of all of the fees and expenses of the CRO Group and their attorneys (collectively the "**CRO Expenses**");

[36]    **ORDERS** that the Petitioners, the Monitor, and the CRO Group shall be bound by the terms and conditions of the CRO Engagement Letter and that the Petitioners, the Monitor, and the CRO Group are hereby authorized to perform all of their respective obligations pursuant to the terms and conditions of the CRO Engagement Letter and that the Petitioners, the Monitor and the CRO Group shall benefit from all of the indemnities and other rights accruing to each of them thereunder;

[37]    **ORDERS** that the CRO is hereby directed and empowered to exercise and perform all of the powers, responsibilities and duties described in the CRO Engagement Letter, as well as all other ancillary powers, responsibilities or duties as may be necessary or useful in

order to give full and proper effect to the terms and conditions of the CRO Engagement
Letter or this Order (collectively the "**CRO Powers**");

[38]  **ORDERS** that the CRO shall not be or be deemed to be a director or employee of
any of the Petitioners.

[39]  **ORDERS** that the Petitioners and their shareholders, direct and indirect subsidiaries,
former and current officers, directors, employees, servants, agents and representatives (the
"**Company Persons**") shall cooperate fully with the CRO in the exercise the CRO Powers.
Without limiting the generality of the foregoing, the Company Persons shall provide the CRO
with such access to the Petitioners' and their direct and indirect subsidiaries' books, records,
assets and premises as the CRO requires to exercise the CRO Powers.

[40]  **ORDERS** that the CRO Group shall incur no liability or obligation as a result of the
engagement under the CRO Engagement Letter or the fulfillment or exercise of the CRO
Powers, save and except for gross negligence or wilful misconduct on the CRO's part,
provided further, that in no event shall the liability of the CRO exceed the quantum of the
fees paid to the CRO Group, and that the CRO shall not, as a result of the fulfillment or
exercise of the CRO Powers, be deemed to occupy or take control, care, charge,
possession or management of any of the property of the Petitioners within the meaning of
any environmental legislation.

[41]  **ORDERS** that no action or other proceeding shall be commenced directly, or by way
of counterclaim, or otherwise, against or in respect of any member of the CRO Group as a
result of or relating in any way to the engagement under the CRO Engagement Letter, the
fulfillment or exercise of the CRO Powers or the carrying out of any of the orders of this
Court, and all rights and remedies of any person against or in respect of them are hereby
stayed and suspended, except with the written consent of the CRO or with leave of this
Court on notice to the Petitioners, the Monitor and the CRO. Notice of any such motion
seeking leave shall be served upon the Petitioners, the Monitor and the CRO at least seven
(7) days prior to the return date of any such motion for leave.

[42]  **ORDERS** that the Petitioners shall pay the CRO Expenses in accordance with the
terms and conditions of the CRO Engagement Letter.

[43]  **ORDERS** that the Administration Charge created pursuant to the Amended and
Restated Initial Order issued by this Court on November 18, 2015, shall secure:

a)  all of the indemnities and rights accruing to and/or benefiting the CRO Group
under the CRO Engagement Letter and this Order; and

b)  all of the CRO Expenses.

The amount of the Administration Charge is not changed by this Order;

[44]  **ORDERS** that the rights and obligations of the CRO pursuant to the CRO
Engagement Letter and Order shall be treated as unaffected and may not be compromised
in any plan of arrangement or proposal filed by the Petitioners in respect of any insolvency
legislation.

[45]     **ORDERS** that the Petitioners will indemnify and hold harmless the CRO Group for
and against all claims, obligations or liabilities that any member of the CRO Group may incur
or for which any member of the CRO Group may become responsible by reason of or in
relation to the CRO Engagement Letter, the fulfillment or exercise of the CRO Powers or this
Order, except where such claims, obligations or liabilities result from the CRO's gross
negligence, willful misconduct or gross or intentional fault provided, however, that in no
event shall the liability of the CRO Group exceed the quantum of fees paid to the CRO
Group. The foregoing indemnity shall survive termination of the CRO's Engagement or the
CRO's discharge.

[46]     **ORDERS** that, notwithstanding any language in any applicable insurance policy to
the contrary:

    a)     no insurer shall be entitled to be subrogated to or claim the benefit of the
        Administration Charge; and

    b)     the CRO Group shall only be entitled to the benefit of the Administration
        Charge for indemnification to the extent that the CRO Group does not have
        coverage under any directors' and officers' insurance policy, or to the extent
        that such coverage is insufficient to pay amounts for which any member of
        the CRO Group is entitled to be indemnified under the CRO Engagement
        Letter or this Order.

[47]     **ORDERS** that the CRO may be removed by order of this Court or may resign, in
accordance with the terms and conditions contained in the CRO Engagement Letter.

[48]     **ORDERS** that the appointment of the CRO and the granting of the CRO Powers will
not constitute the sale or disposition of the Business or the sale or disposition of any of the
Property and such Business and Property will continue to be the Business and Property of
the Petitioners unless and until sold in whole or in part to a purchaser.

[49]     **ORDERS** that the CRO shall be subject to the supervisory jurisdiction of the Court.

[50]     **ORDERS** that the CRO may request the Monitor to apply or may itself apply to this
Court from time to time for advice and directions concerning any matter pertaining to the
CRO Engagement Letter or this Order.

**Priorities and General Provisions Relating to CCAA Charges**

[51]     **DECLARES** that the priorities of the Administration Charge, the Interim Lender
Charge and Directors' Charge (collectively, the "**CCAA Charges**"), as between them with
respect to any Property to which they apply, shall be as follows:

    (a)     first, the Administration Charge;

    (b)     second, the Directors' Charge if any is granted later; and

    (c)     third, the Interim Lender Charge if any is granted later.

[52]     **DECLARES** that each of the CCAA Charges shall rank in priority to any and all other
hypothecs, mortgages, liens, security interests, priorities, charges, encumbrances or

security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property
charged by such Encumbrances;

[53]     **ORDERS** that, except as otherwise expressly provided for herein, the Petitioners
shall not grant any Encumbrances in or against any Property that rank in priority to, or pari
passu with, any of the CCAA Charges unless the Petitioners obtain the prior written consent
of the Monitor and the prior approval of the Court;

[54]     **DECLARES** that each of the CCAA Charges shall attach, as of the Effective Time, to
all present and future Property of the Petitioners, notwithstanding any requirement for the
consent of any party to any such charge or to comply with any condition precedent;

[55]     **DECLARES** that the CCAA Charges and the rights and remedies of the beneficiaries
of such Charges, as applicable, shall be valid and enforceable and shall not otherwise be
limited or impaired in any way by: (i) these proceedings and the declaration of insolvency
made herein; (ii) any petition for a receiving order filed pursuant to the BIA in respect of the
Petitioners or any receiving order made pursuant to any such petition or any assignment in
bankruptcy made or deemed to be made in respect of the Petitioners; or (iii) any negative
covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt
or the creation of Encumbrances, contained in any agreement, lease, sub-lease, offer to
lease or other arrangement which binds the Petitioners ("**Third Party Agreement**"), and
notwithstanding any provision to the contrary in any Third Party Agreement:

  (a)     the creation of any of the CCAA Charges shall not create or be deemed to
          constitute a breach by the Petitioners of any Third Party Agreement to which
          it is a party; and

  (b)     any of the beneficiaries of the CCAA Charges shall not have liability to any
          Person whatsoever as a result of any breach of any Third Party Agreement
          caused by or resulting from the creation of the CCAA Charges.

[56]     **DECLARES** that notwithstanding: (i) these proceedings and any declaration of
insolvency made herein, (ii) any petition for a receiving order filed pursuant to the BIA in
respect of the Petitioners and any receiving order allowing such petition or any assignment
in bankruptcy made or deemed to be made in respect of the Petitioners, and (iii) the
provisions of any federal or provincial statute, the payments or disposition of Property made
by the Petitioners pursuant to the Order and the granting of the CCAA Charges, do not and
will not constitute settlements, fraudulent preferences, fraudulent conveyances or other
challengeable or reviewable transactions or conduct meriting an oppression remedy under
any applicable law;

[57]     **DECLARES** that the CCAA Charges shall be valid and enforceable as against all
Property of the Petitioners and against all Persons, including, without limitation, any trustee
in bankruptcy, receiver, receiver and manager or interim receiver of the Petitioners, for all
purposes;

**Confidentiality**

[58]     **ORDERS** that Exhibits P-11, P-12, P-14, P-15, C-14, C-15 and C-16 be placed
under seal in the records of the Superior Court of Québec and that it not be disclosed,

published or disseminated, directly or indirectly, without prior authorization of this Honourable Court;

[59]    **ORDERS** the Office of the Superior Court of Québec to deny access to Exhibits P-11, P-12, P-14, P-15, C-14, C-15 and C-16 to the public;

**General**

[60]    **ORDERS** that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors, employees, legal counsel or financial advisers of the Petitioners or of the Monitor in relation to the Business or Property of the Petitioners, without first obtaining leave of this Court, upon five (5) days written notice to the Petitioners' counsel and to all those referred to in this paragraph whom it is proposed be named in such Proceedings;

[61]    **DECLARES** that the Order and any proceeding or affidavit leading to the Order, shall not, in and of themselves, constitute a default or failure to comply by the Petitioners under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement;

[62]    **DECLARES** that, except as otherwise specified herein, the Petitioners and the Monitor are at liberty to serve any notice, proof of claim form, proxy, circular or other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery or electronic transmission to Persons or other appropriate parties at their respective given addresses as last shown on the records of the Petitioners and that any such service shall be deemed to be received on the date of delivery if by personal delivery or electronic transmission, on the following business day if delivered by courier, or three business days after mailing if by ordinary mail;

[63]    **DECLARES** that the Petitioners and any party to these proceedings may serve any court materials in these proceedings on all represented parties electronically, by emailing a PDF or other electronic copy of such materials to counsels' email addresses, provided that the Petitioners shall deliver "hard copies" of such materials upon request to any party as soon as practicable thereafter;

[64]    **DECLARES** that, unless otherwise provided herein, under the CCAA, or ordered by this Court, no document, order or other material need be served on any Person in respect of these proceedings, unless such Person has served a Notice of Appearance on the solicitors for the Petitioners and the Monitor and has filed such notice with this Court, or appears on the service list prepared by the monitor or its attorneys, save and except when an order is sought against a Person not previously involved in these proceedings;

[65]    **DECLARES** that the Petitioners or the Monitor may, from time to time, apply to this Court for directions concerning the exercise of their respective powers, duties and rights hereunder or in respect of the proper execution of the Order on notice only to each other;

[66]    **DECLARES** that any interested Person may apply to this Court to vary or rescind the Order or seek other relief upon five (5) days' notice to the Petitioners, the Monitor and to any other party likely to be affected by the order sought or upon such other notice, if any, as this Court may order, such application or motion shall be filed during the Stay Period ordered by this Order, unless otherwise ordered by this Court;

[67] **DECLARES** that the Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada;

[68] **DECLARES** that the Monitor, with the prior consent of the Petitioners, or the Petitioners, with the prior consent of the Monitor, shall be authorized to apply as deemed necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders which aid and complement the Order and any subsequent orders of this Court and, without limitation to the foregoing, an order under Chapter 15 of the U.S. Bankruptcy Code, for which the Monitor or the Petitioners shall be the foreign representative for the purposes of such filing. All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Monitor or to the Petitioners as may be deemed necessary or appropriate for that purpose;

[69] **REQUESTS** the aid and recognition of any Court or administrative body in any Province of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the United States of America and any court or administrative body elsewhere, to act in aid of and to be complementary to this Court in carrying out the terms of the Order;

[70] **ORDERS** the provisional execution of the Order notwithstanding any appeal;

[71] **WITHOUT COSTS.**

**JEAN-FRANÇOIS MICHAUD, J.S.C.**

Hearing date: January 28, 2016

Mtre. Roger P. Simard
Mtre. Ari Y. Sorek
Mtre. Myriam Simard
*Dentons Canada LLP*
Attorneys for Petitioners

Mtre. François Viau
Mtre. Denis St-Onge
*Gowling Lafleur Henderson*
Attorneys for Callidus Capital Corporation

Mtre. Joseph Reynaud
*Stikeman Elliott*
Attorneys for the Monitor

EXHIBIT B

(Sale Order)

# SUPERIOR COURT
*(Commercial Division)*

C A N A D A
PROVINCE OF QUEBEC
DISTRICT OF MONTRÉAL

N°:   500-11-049737-154

DATE: January 28, 2016

---

**PRESIDING: THE HONOURABLE JEAN-FRANÇOIS MICHAUD, J.S.C.**

---

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED OF:**

**BLUBERI GAMING TECHNOLOGIES INC. /
BLUBERI JEUX ET TECHNOLOGIES INC.**
-and-
**BLUBERI GROUP INC.**
-and-
**BLUBERI USA, INC.**
        Insolvent Debtors/Petitioners
-and-

**ERNST & YOUNG INC.**
        Monitor

---

## ORDER APPROVING A SALE SOLICITATION PROCESS

---

[1]    **THE COURT,** upon reading the *Application for Approval of a Sale Solicitation Process* filed by Bluberi Gaming Technologies Inc., Bluberi Group Inc. and Bluberi USA, Inc.'s (the "**Petitioners**"), the exhibits in support thereof, the affidavits of Mr. Gérald Duhamel and Mr. Joe Pernica (collectively, the "**Application**"), relying upon the submissions of counsel and being advised that the interested parties were given prior notice of the presentation of the Application;

[2]    **CONSIDERING** the report of Ernst & Young Inc. (represented by Mr. Martin Rosenthal, CPA, CA, CIRP) as Monitor (the "**Monitor**"), dated January 26th 2016 and the recommendations of the Chief Restructuring Officer, as set forth therein;

[3]    **SEEING** the provisions of the *Companies' Creditors Arrangement Act*;

**WHEREFORE, THE COURT:**

[4]    **GRANTS** the Application;

[5]    **DECLARES** that all capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Application and in the Amended and Restated Initial Order issued in this matter;

**SERVICE**

[6]    **DECLARES** that sufficient prior notice of the presentation of the Application has been given by the Petitioners to interested parties, that supporting material is good and sufficient and that further service thereof is hereby dispensed with;

**SSP**

[7]    **APPROVES** the Sale Solicitation Process ("**SSP**") contemplated by the Monitor and set forth in the Form of Procedures for a Sale Solicitation Process attached herewith;

[8]    **AUTHORIZES** and **DIRECTS** Ernst & Young Inc., Ernst & Young Orenda Corporate Finance (Canada) Inc., and Ernst & Young Orenda Corporate Finance Inc., in conjunction with the Petitioners, the CRO and other advisors, to implement the Form of Procedures for a Sale Solicitation Process;

[9]    **ORDERS** the provisional execution of this Order, notwithstanding any appeal and without the necessity of furnishing any security; and

[10]    **WITHOUT COSTS**.

**JEAN-FRANÇOIS MICHAUD, J.S.C.**

Hearing date: January 28, 2016

Mtre. Roger P. Simard
Mtre. Ari Y. Sorek
Mtre. Myriam Simard
*Dentons Canada LLP*
Attorneys for Petitioners

Mtre. François Viau
Mtre. Denis St-Onge
*Gowling Lafleur Henderson*
Attorneys for Callidus Capital Corporation

Mtre. Joseph Reynaud
*Stikeman Elliott*
Attorneys for the Monitor

# FORM OF PROCEDURES FOR A
# SALE SOLICITATION PROCESS ("SSP")

## INTRODUCTION[1]

On November 12, 2015, Bluberi Group Inc., Bluberi Gaming Technologies Inc. and Bluberi USA, Inc. (the "**Debtors**", the "**Companies**" or "**Bluberi**") commenced proceedings (the "**CCAA Proceedings**") seeking relief under the *Companies' Creditors Arrangement Act* (the "**CCAA**") before the Superior Court of Québec, Commercial Division, in Montreal, Canada (including any appellate tribunal, the "**CCAA Court**"). On the same day, the CCAA Court issued a temporary initial order under the CCAA in respect of the Companies and on November 18, 2015, the CCAA Court issued an amended and restated initial order (as may be further amended or restated, the "**Initial Order**") establishing that the Companies are debtor companies to which the CCAA applies, appointing Ernst & Young Inc. ("**EY**" or the "**Monitor**") as monitor and granting certain relief to the Debtors, including certain protections from their creditors. Specifically, the Initial Order granted by the CCAA Court, together with the relief afforded under the CCAA, provide, among other things, for a stay of proceedings against the Companies which was most recently extended until January 29, 2016 (as further extended from time to time, the "**Stay Period**").

The Companies have determined that their restructuring requires the implementation of the sale and solicitation process outlined herein (the "**SSP**"), pursuant to which Bluberi will seek to divest itself of all of its movable and immovable assets, rights and undertakings (the "**Assets**").

It is expected that on or around January 28, 2016, the CCAA Court will be requested to rule upon an application in which Bluberi will seek (i) the approval of the SSP and the procedures set forth herein (the "**SSP Procedures**"); (ii) an extension of the Stay Period until March 31, 2016; and (iii) the issuance of an amended and restated Initial Order. The SSP undertaken by Bluberi will be required to follow the SSP Procedures and the terms of any order issued by the CCAA Court approving the SSP and the SSP Procedures (the "**SSP Order**").

## SUMMARY

The SSP Procedures set forth herein describe, among other things, the Assets to be offered as part of a transaction, the manner in which prospective bidders will be solicited, the manner in which prospective bidders may gain access to or continue to have access to due diligence materials concerning the Assets, the procedure to be followed by bidders who wish to file an Offer (as defined below), the receipt and negotiation of the Offers received, the timeframe for additional steps which shall be carried out pursuant to a further order of the CCAA Court, the selection of a Successful Offer (as defined below) and the Court's approval thereof.

The SSP will be conducted by the Monitor with the assistance of, and in consultation with, Bluberi's Chief Restructuring Officer ("**CRO**") and Bluberi. In light of the fact that the SSP will include the offered shares of a US corporation, it is contemplated that in order to implement the SSP, the Monitor will enter into a subcontract with its affiliate, Ernst & Young Orenda Corporate Finance Inc., a registered exempt market dealer in Canada and its wholly owned subsidiary, Ernst & Young

---

[1] In these Forms of Procedures, reference to a party is deemed to include said party's legal advisors, to the extent applicable.

Orenda Corporate Finance (Canada) Inc., an entity that possesses a broker-dealer license in compliance with the requirements of the U.S. Securities and Exchange Commission.[2]

In addition to the steps outlined herein, the closing of any transaction in respect of the Assets may involve additional intermediate steps, conditions subsequent, or transactions to facilitate the consummation of such sale, including additional Court filings and Orders, mergers or amalgamations of entities, issuance of shares and/or other corporate transactions involving the Companies and/or related entities.

The following is a brief summary of the steps and timeline associated with the SSP. Each step is described in greater detail in the "Form of Procedures" section of this document.

(a)     The SSP commenced in January 2016, at which time Bluberi, with assistance of the CRO and the Monitor, began (i) populating a list of strategic and financial parties who may potentially be interested in acquiring the Assets (each, a **"Potential Bidder"**), and concurrently, (ii) preparing the documentation required to implement the SSP, including an initial offering summary (the **"Teaser Letter"**) that will be sent to all Potential Bidders to notify them of the existence of the SSP and to invite them to make an Offer.

(b)     As promptly as practicable after the issuance of the SSP Order, the Monitor will distribute to all Potential Bidders the Teaser Letter as well as a draft confidentiality agreement (a **"Confidentiality Agreement"**).

(c)     As promptly as practicable after a Potential Bidder qualifies as a Qualified Bidder (as defined below), Bluberi, with the assistance of the Monitor, will grant to said Qualified Bidder access to a data room that contains information on Bluberi and the Assets (the **"Data Room"**), including a Confidential Information Memorandum (the **"CIM"**) describing the opportunity to acquire the Assets. The Qualified Bidder will be able to immediately begin its due diligence with regard to the Assets.

(d)     By no later than March 7, 2016 at 12:00 pm (prevailing Eastern Time), any Qualified Bidder interested in bidding on the Assets will need to submit to the Monitor, in the manner prescribed in the SSP Procedures, an offer that complies with the requirements set out herein (an **"Offer"**).

(e)     By no later than March 18, 2016, or at such date as may be selected by the Court or by the Monitor, in consultation with Bluberi, the CRO and Bluberi's main secured creditor, Callidus Capital Corporation (the **"Secured Creditor"**): (i)   the Monitor, after a comprehensive evaluation of the Offers received and in consultation with the CRO, Bluberi and the Secured Creditor, will, issue a recommendation to Bluberi regarding the selection of an Offer; and (ii) Bluberi will file, by no later than March 23, 2016, an application with the CCAA Court seeking approval of an Offer (the **"Successful Offer"**), the sale of the Assets, and a vesting order.

(f)     By no later than March 31, 2016, or such other date as is mutually agreeable to the purchaser and to the Monitor, in consultation with Bluberi, the CRO and the Secured Creditor, a transaction consummating the Successful Offer will be concluded.

---

[2] Any reference herein to the "Monitor" is deemed to include, where applicable, in addition to Ernst & Young Inc., Ernst & Young Orenda Corporate Finance Inc. and Ernst & Young Orenda Corporate Finance (Canada) Inc.

## FORM OF PROCEDURES

### Proposed Transaction and Assets

1. This SSP does not place limits on the form of transaction that may be put forward by a Qualified Bidder (a "**Proposed Transaction**") and is not restricted to a specific type of sale or investment. The structure of the Proposed Transaction is left to the preference or needs of the Qualified Bidder who wishes to make an Offer.

2. The Proposed Transaction may address any transaction in respect of the Assets, being all the movable and immovable assets, rights and undertakings of the Companies, including, without limiting the generality of the foregoing, the capital-stock held by Bluberi Group Inc. in its subsidiaries, Bluberi Gaming Technologies Inc. and Bluberi USA, Inc. A Proposed Transaction may also address a sale in respect of all or a portion of the Assets, as determined in the sole discretion of the Qualified Bidder.

### "As Is, Where Is"

3. Any transaction concluded pursuant to this SSP will be on an "as is, where is" basis, at the sole risk and peril of the purchaser, and without any surviving representations, warranties or indemnities of any kind, nature or description by Bluberi, the CRO, the Monitor or any of their respective directors, officers, employees, agents, estates, advisors, professionals or otherwise, except to the extent specifically set forth in the relevant sale agreement ultimately approved by the CCAA Court.

### Free Of Any And All Claims And Interests

4. To the extent that a Proposed Transaction results in a sale of the Assets, all of the rights, title and interests of Bluberi in and to the Assets to be acquired, or any portion thereof, will be sold free and clear of all security, charges, pledges, hypothecs, liens, encumbrances, claims or other restrictions thereon and there against (collectively, the "**Charges**") as permitted by section 36(6) of the CCAA, such Charges to attach to the net proceeds of the sale of such Assets (without prejudice to any claims or causes of action regarding the priority, validity or enforceability thereof).

### Participation Requirements

5. Unless otherwise determined by the Monitor and/or the Court, in order to participate in the Solicitation Process, each Potential Bidder must deliver to the Notice Parties (as defined below), at the addresses provided herein, the following documents (the "**Participation Documents**"):

(a) an executed Confidentiality Agreement;

(b) a letter setting forth the identity of the Potential Bidder (and, if applicable, its sponsor), the contact information for such Potential Bidder and its principal advisors, and full disclosure of any pre-petition or post-petition affiliations that the Potential Bidder has or may have with (i) Bluberi, (ii) any affiliates of Bluberi, (iii) any creditor of Bluberi or any affiliates or subsidiaries thereof, including any officers, directors, or managers thereof, (iv) any holder of equity securities of Bluberi and (v) any current or former officers, managers or directors of the Bluberi or its affiliates; and,

(c)   any other information reasonably requested by the Monitor and/or the Court, in consultation with Bluberi and the CRO.

### Determination of Qualified Bidders and
### Distribution of Confidential Information Memorandum and access to Data Room

6.   As promptly as practicable after the delivery, by a Potential Bidder, of its Participation Documents, a Potential Bidder that has delivered a complete set of the required Participation Documents will be deemed a **"Qualified Bidder"** to the extent that the Monitor determines, in its reasonable business judgment and in consultation with Bluberi and the CRO, that said Potential Bidder is likely to be able to consummate a potential Proposed Transaction.

7.   Contemporaneously with the determination that a Potential Bidder is a Qualified Bidder, Bluberi, with the assistance of the Monitor, will provide said Qualified Bidder with access to the Data Room containing the CIM to allow it to perform its due diligence.

### Submission of an Offer

8.   In order to be considered, **an Offer must be delivered in writing to the Monitor no later than March 7, 2016 at 12:00 pm (prevailing Eastern Time)** (the "Bid Deadline"), **in a sealed envelope delivered by registered mail or by messenger** addressed to Ernst & Young Inc., Attn: Martin Rosenthal, 800 René-Lévesque Blvd. West, Suite 1900, Montreal, Quebec, Canada H3B 1X9.

9.   An Offer will be considered only if it complies with all of the following requirements:

(a)   it includes a mark-up of the template purchase agreement to be provided to Qualified Bidders in the Data Room;

(b)   it states that the Qualified Bidder offers to purchase the Assets upon the terms and conditions substantially as set forth in the SSP, including, without limitation, with respect to certainty and timing of closing, or pursuant to an alternative structure, or upon alternative terms and conditions that the Monitor determines are no less favorable than the terms and conditions of the SSP;

(c)   it includes a purchase price for the Assets, expressed in U.S. or Canadian dollars (the **"Purchase Price"**) and lists any liabilities to be assumed by the Qualified Bidder;

(d)   it is accompanied by a fully refundable deposit in the form of a draft or a cheque certified by a chartered bank in an amount of at least 2.5% of the Purchase Price, up to a maximum amount of CAD$2,000,000, payable to the order of Ernst & Young Inc., In Trust (the **"Deposit"**).

(e)   it sets out the structure of a financing for the transaction and any related contingencies, as applicable, and includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the sale, so as to allow a reasonable determination to be made as to the capabilities of the Qualified Bidder to consummate the Proposed Transaction;

(f)   it is not conditional upon (i) the outcome of unperformed due diligence by the Qualified Bidder (and includes an acknowledgement and representation that the Qualified Bidder

has had an opportunity to conduct any and all required due diligence regarding the
Assets prior to making its offer) or (ii) obtaining financing;

(g) it fully discloses the identity of the entity that is bidding for the Assets or otherwise
sponsoring or participating in connection with such bid, and the complete terms of any
such participation;

(h) it includes the list of the executory contracts and unexpired leases that it proposes to
assume with a confirmation that the Qualified Bidder will assume the related cure costs
(or identifies with particularity which of such contracts and leases the Qualified Bidder
wishes not to assume) and it identifies with particularity any executory contract or
unexpired lease, the assumption and assignment of which is a condition to closing;

(i) it includes an acknowledgement and representation that the Qualified Bidder: (i) has
relied solely upon its own independent review, investigation and/or inspection of any
documents and/or the Assets in making its bid and (ii) did not rely upon any written or
oral statements, representations, promises, warranties or guaranties whatsoever, whether
express or implied (by operation of law or otherwise), regarding the Assets or the
completeness of any information provided in connection therewith;

(j) it includes evidence, in form and substance reasonably satisfactory to the Monitor, of
authorization and approval from the Qualified Bidder's board of directors (or
comparable governing body) with respect to the submission, execution, delivery and
closing of the agreement addressing the sale of the Assets and any other ancillary
agreements;

(k) it includes evidence, in form and substance reasonably satisfactory to the Monitor, of
compliance or anticipated compliance with all regulatory approvals (including, if
applicable, anti-trust and Investment Canada approvals as well as approval by the
authorities involved in the regulation of the gaming industry in applicable jurisdictions),
the anticipated time frame and any anticipated impediments for obtaining such
approvals;

(l) it contains full details of the proposed number of employees of Bluberi who will become
employees of the Qualified Bidder and any proposed measures associated with the
continued employment and associated with the employment of all employees who will
become employees of the Qualified Bidder;

(m) it describes any conditions to closing that the Qualified Bidder wishes to impose as well
as any other terms or conditions of the purchase proposal which the Qualified Bidder
believes are material to the transaction; and

(n) it identifies the Qualified Bidder's principal advisors.

## Deposit

10. All Offers submitted constitute a firm offer and cannot be revoked. Should the Qualified
Bidder attempt or purport to revoke its Offer at any time prior to receiving written notice from the
Monitor of the acceptance or the rejection of the Offer, or an Offer be duly accepted and the offeror of

said Successful Offer fail to fulfill its obligation thereunder, including to complete the sale, then the Deposit shall be forfeited by the Qualified Bidder to the Monitor for the benefit of Bluberi.

11. The Deposit accompanying the Offer will be returned to a Qualified Bidder whose Offer has not been selected as a Successful Offer.

## Due Diligence

12. The Monitor, in consultation with Bluberi and the CRO, will receive and coordinate all reasonable requests for information and due diligence access from Qualified Bidders.

13. Subject to competitive and other business and legal considerations, each Qualified Bidder will be granted access to materials and information relating to the Assets provided the Monitor, in consultation with Bluberi and the CRO, deems it appropriate. Such due diligence access may include access to the Data Room, management presentations, property tours and other matters which a Qualified Bidder may reasonably request, and as to which Bluberi, in its reasonable business judgment, may agree.

14. Neither the Monitor, Bluberi or the CRO, nor any of their affiliates (or any of their respective representatives) will be obligated to furnish any information relating to the Assets to any person other than to Qualified Bidders. The Monitor, Bluberi and the CRO make no representation or warranty as to the information or the materials provided, except, in the case of Bluberi, to the extent contemplated under any definitive sale agreement with a Qualified Bidder executed and delivered by the applicable Bluberi entities.

15. Bluberi, the Monitor and the CRO consent that the Qualified Bidders may have access to gaming and licensing authorities and accept to facilitate this access if needed.

## Selection of a Successful Offer and Closing

16. The sealed envelopes containing the written Offer(s) that have been received by the Monitor on or before the Bid Deadline will be opened by the Monitor in the presence of Bluberi, the CRO, and the Secured Creditor, as soon as practicable after the Bid Deadline.

17. An Offer will be valued based upon several factors including, without limitation, items such as the Purchase Price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder) provided by such bid, the claims likely to be created by such bid in relation to other bids, the counterparties to the transaction proposed by the Qualified Bidder, the effect of the Proposed Transaction on the value of the ongoing businesses of Bluberi (including ongoing relationships with customers and suppliers), other factors affecting the speed, certainty and value of the proposed transaction (including regulatory or other approvals required to close the transaction), any assets excluded from the bid, the estimated number of employees of Bluberi to be offered post-closing employment by the Qualified Bidder and any proposed measures associated with the continued employment of all employees who will become the employees of the Qualified Bidder, the transition services required from Bluberi post-closing and any related restructuring costs, and the likelihood and timing of consummating such Proposed Transaction, each as determined by Bluberi, in consultation with the CRO, the Monitor and the Secured Creditor.

18. Bluberi reserves the right, taking into account all other factors set forth herein (including execution risk), to choose a Successful Offer that did not offer the highest purchase price for the

Assets. Following its review of the Offers and in consultation with the CRO, the Monitor and the Secured Creditor, Bluberi shall, in its sole discretion, select a Successful Offer.

19. By no later than March 18, 2016, or at such date as may be selected by the Court or by the Monitor, in consultation with Bluberi, the CRO and the Secured Creditor: (i) the Monitor, after a comprehensive evaluation of the Offers received and in consultation with the CRO, Bluberi and the Secured Creditor, will, issue a recommendation to Bluberi regarding the selection of an Offer; and (ii) Bluberi shall execute the definitive transaction documentation (the "**Sale Documentation**"), subject to Court approval, and file, by no later than March 23, 2016, an application with the CCAA Court to request the approval of the sale of the Assets and the Sale Documentation.

20. By no later than March 31, 2016, or such other date as is mutually agreeable to the purchaser and to the Monitor, in consultation with Bluberi, the CRO and the Secured Creditor, a transaction consummating the Successful Offer will be concluded.

### No Offer

21. If the Monitor does not receive an acceptable Offer, the Monitor reserves the right, in consultation with Bluberi, the CRO and the Secured Creditor, to (i) extend the deadlines set forth in the SSP Procedures without further notice, and (ii) withdraw from the sale, in whole or in part, any Assets at any time, and to make subsequent attempts to market same.

### Notice Parties

22. As used herein, the "**Notice Parties**" include all of the following: (i) Bluberi, Attn: Joe Pernica, CRO, 2120 Letendre Street, Drummondville, Quebec, Canada, J2C 7E9, Email: Joe.Pernica@bluberi.com; (ii) Debtors' legal counsel: Dentons Canada LLP, Attn. Ari Y. Sorek & Roger P. Simard, 1 Place Ville-Marie, Suite 3900, Montreal, Quebec, Canada, H3B 4M7, Emails: ari.sorek@dentons.com and roger.simard@dentons.com; and, (iii) the Monitor: Ernst & Young Inc., Attn: Martin Rosenthal, 800 René-Lévesque Blvd. West, Suite 1900 Montreal, Quebec, Canada H3B 1X9, Email: martin.rosenthal@ca.ey.com.

### Reservation of Rights

23. The Monitor, in consultation with Bluberi, the CRO and the Secured Creditor, may recommend that Bluberi, and Bluberi may: (a) reject, at any time, any Offer that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the CCAA, the SSP Procedures, or any other orders applicable to one or more Debtors, or the terms and conditions of the Proposed Transaction, or (iii) contrary to the best interests of Bluberi, their estates, and stakeholders; (b) impose additional terms and conditions and otherwise seek to modify the SSP Procedures at any time; (c) withdraw from a transaction in respect of the Assets at any time and make subsequent attempts to market the same; and (d) reject all bids.

24. These SSP Procedures do not, and shall not be interpreted to, create any contractual or other legal relationship between any member of Bluberi and any Potential Bidder or Qualified Bidder, other than as specifically set forth in definitive agreements that may be signed with Bluberi.

## Credit Bid

25. Notwithstanding anything herein to the contrary, including without limitation, the bidding requirements herein, but subject to the present section "Credit Bid" and any provisions of applicable legislation, the Secured Creditor shall be deemed to be a Qualified Bidder and no deposit will be required from the Secured Creditor (or a party controlled by it) to participate in the SSP.

26. The Secured Creditor shall be permitted, in its sole discretion, to credit bid up to the full amount of the Companies' debt to it under its financing agreement, which debt is presently estimated to amount to approximately CDN\$85 million (the "**Secured Creditor's Claim**"), subject however, to the Monitor being satisfied with the validity, opposability and enforceability of the security published by the Secured Creditor and the quantum of the Secured Creditor's Claim.

27. At closing of any sale of assets resulting from the Secured Creditor's decision to avail itself of its option to submit a credit bid, subject to the terms of any proposed agreement in respect thereof, the Secured Creditor will deposit with the Monitor an amount, in cash, corresponding to the aggregate of all claims that rank in priority to the Secured Creditor's Claim, including, *inter alia*, the Administration Charge (as such term is defined in the Initial Order), the amount of \$2,000 per employee of Bluberi (estimated at \$316,000 as at the date hereof), in addition to a reserve deemed sufficient, in the opinion of the Monitor, to acquit any and all fiscal obligations and payroll liabilities of Bluberi of the then-current period, the whole to be distributed and collocated in accordance with the terms of a future order of the CCAA Court.

\*\*\*\*\*